705 So.2d 687 (1998)
John Robert OLSON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3417.
District Court of Appeal of Florida, Fifth District.
January 30, 1998.
*689 Roy Black and Christine M. Ng of Black, Srebnick & Kornspan, P.A., Miami, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for Appellee.
COBB, Judge.
The defendant, John Olson, appeals from convictions for two counts of lewd and lascivious assault upon a child under sixteen and one count of attempt to commit that crime. The alleged victim, J. S., was thirteen years old at the time and the defendant was twenty.
In 1996, Olson initially was charged by information in Counts I and II with committing a lewd and lascivious act on a child under sixteen, and in Count III with attempting to commit such an act. Count IV also alleged a lewd and lascivious acti.e., that Olson forced J.S. to fondle Olson's penis. Subsequently, the state filed an amended information which changed Count III to allege a completed act and dropped Count IV.
Prior to trial, defense counsel sought to depose two assistant state attorneys to learn why the information was amended and whether J.S. had given conflicting oral statements to them that could be used for purposes of impeachment. The trial court refused to allow the depositions. The defense also sought, by pretrial motion and at the start of the trial, to disqualify the state attorney's office because the defense planned to call attorneys with that office as impeachment witnesses at trial. The motions to disqualify were denied.
At trial, the defense, over objection, called assistant state attorneys Paul Norville and Nicole Schell as impeachment witnesses to determine what evidence supported amending the information. Norville had filed the original information and Schell filed the amended information. Norville testified that he based the original information on sworn testimony from J.S. Schell testified that she filed the amended information dropping the original Count IV because at a deposition J.S. denied having touched the defendant's penis.
Norville and Schell gave opinions on cross-examination by the state about whether J.S. was telling the truth and whether the defendant was guilty. On direct examination, Norville testified that he does not file an information unless he believes that it is true and can be proven in court. On cross-examination, Norville testified, without objection, that he believed J.S. that these incidents in fact occurred because J. S.'s demeanor was one of truthfulness. Schell testified on cross-examination that she was convinced of Olson's guilt at the time she filed the amended information and was still so convinced at the time of trial. Schell's testimony on cross-examination was as follows:
Q ....in speaking with the victim and based on your experience, were you convinced that in fact the Defendant had committed these crimes?
A. Yes.
* * * * * *
Q. You were convinced?
A. And I still am.
The defense objection to Schell's testimony was overruled and the defense motion for mistrial was denied.
*690 The issue on appeal, as framed by the appellant, is:
WHETHER THE TRIAL COURT ERRED IN PERMITTING THE ASSISTANT STATE ATTORNEYS TO TESTIFY TO THEIR OPINIONS THAT THE VICTIM WAS TELLING THE TRUTH AND THAT THE DEFENDANT WAS GUILTY OF THE CHARGED CRIMES.
Olson maintains that the two assistant state attorneys, Norville and Schell, whom the defense called "for the limited purpose of explaining the basis for the amended information," were erroneously and prejudicially permitted to vouch for the credibility of the victim and opine as to the guilt of the accused. The defense points out that no witness is permitted to vouch for the credibility of another witness or give an opinion as to the guilt or innocence of the accused. See Glendening v. State, 536 So.2d 212 (Fla. 1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989); Tingle v. State, 536 So.2d 202 (Fla.1988). See also Morgan v. State, 639 So.2d 6 (Fla.1994). According to the defendant, the error was particularly prejudicial here because the credibility of J.S. and Olson were the sole issues in the case.
The state responds that the defendant called these two witnesses and actually initiated the inquiry into credibility. The state also points out that no objection was interposed as to Norville's testimony and that therefore the purported error was not preserved as to his testimony and any similar testimony from Schell was merely cumulative.
The state's initial contention is incorrect. The defense did call Norville and Schell and inquired into the circumstances surrounding the filing of the initial and the amended informations. These witnesses were asked, inter alia, whether J.S. spoke to them after being placed under oath (he did), what the basis was for the various counts in the informations, and whether J.S. gave testimony under oath in support of these counts (he did). The witnesses were not asked on direct whether they personally believed what J.S. told them. At most on direct examination Norville stated that he does not file an information unless "I believe that it's true and that I can prove that count in court." On cross-examination, however, Norville testified, without objection, that he believed J.S. that these incidents in fact occurred because his demeanor was one of truthfulness.
The elicitation of this testimony, whereby the prosecutor directly vouched for the credibility of the prosecuting witness and opined as to the guilt of the accused, was error. Glendening; Tingle. However, defense counsel failed to object to the testimony from Norville. In Glendening, the supreme court held that the erroneous admission of testimony vouching for the credibility of a witness or opining as to the guilt or innocence of an accused does not amount to fundamental error. Glendening, 536 So.2d at 221. Indeed, in Hunter v. State, 660 So.2d 244 (Fla.1995), the supreme court indicated that upon a timely objection, an instruction to the jury to disregard a witness' comment on credibility improperly elicited by the prosecutor may be sufficient to avoid a mistrial. The error as to Norville's testimony was not preserved.
The error in regard to the testimony elicited from Schell on cross-examination by the state, however, was preserved. And it was more egregious than that of Norville in two essential respects: (1) Schell was trial counsel, adding enormous impact to her sworn testimony from the witness stand; and (2) whereas Norville had testified only that he believed what J.S. had told him, Schell testified that she believed, even at the time of trial, in the guilt of Olson, which belief may well have been fortified (at least in the minds of the jurors) by other information not presented in court.
We believe the trial court was right the first time in denying the pre-trial defense efforts to subpoena the two state attorneys and inquire into oral communications, sworn or otherwise, between them and a state witness. The oral and unrecorded statements of witnesses to a state attorney are privileged as work product and not subject to discovery. See State v. Rabin, 495 So.2d 257, n. 4 (Fla. 3d DCA 1986). Investigations by state attorneys to determine whether or not *691 to file a sworn information are not subject to discovery by oral deposition; such discovery would require disclosure of work product and seriously impede criminal prosecutions. Eagan v. DeManio, 294 So.2d 639 (Fla.1974). If not subject to discovery, such statements surely cannot be sought by a fishing expedition at trial, as was done in this case.
The trial court erred, and was invited to do so by the defense, when it allowed the defense to call Norville and Schell as impeachment witnesses at trial over a work product objection by the state. This invited error was elevated to reversible error when the attorney presenting the state's case at trial (Schell) was allowed to testify, over objection, as to her belief in the defendant's guilt. Indeed, in the absence of objection to Schell's testimony, we would find fundamental error in allowing the state's trial counsel to testify as a witness to her belief in the defendant's guilt. The impact upon a jury of such testimony under oath from trial counsel could not have been cured by any conceivable instruction.
Florida Rule of Criminal Procedure 3.220(b)(1)(B) provides for discovery of written or recorded witness statements. The clear implication of this rule is that such statements, if not written or recorded, are not discoverable. In the event such written or taped statements are discovered pretrial by the defense, it is the preserved statement itself, and not the personal recollection of the state attorney present at the time, that may be used for purposes of impeachment.
Since this case must be reversed for a new trial, we note two other errors committed by the trial court. It was error to exclude evidence as to J. S.'s previous hospitalization for mental problems, and his mother's long-standing involvement in a victim rights organization for victims of sexual abuse. The evidence was relevant on the issues of credibility of these two witnesses. See Robinson v. State, 438 So.2d 8 (Fla. 5th DCA 1983). In light of our reversal for a new trial, the defendant's remaining point need not be addressed.
REVERSED AND REMANDED FOR A NEW TRIAL.
DAUKSCH, J., and ORFINGER, M., Senior Judge, concur.